IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FOREMOST FARMS USA, COOPERATIVE,

                Plaintiff,

v.

DIAMOND V MILLS, INC.,

                Defendant.

OPINION & ORDER

16-cv-551-jdp

---

This is a trademark case. Plaintiff Foremost Farms USA, Cooperative, sells a food ingredient, dried whey powder, under the mark NUTRITEK, which has been federally registered since in 1963. Defendant Diamond V Mills, Inc., sells animal feed supplements using the same mark, NUTRITEK, for which it acquired federal registration in 2015. Foremost contends that Diamond V's infringes its federal and common law trademark rights, and it seeks cancellation of Diamond V's NUTRITEK registration.

Diamond V moves to dismiss Foremost's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 20. Diamond V argues that its NUTRITEK mark cannot infringe on Foremost's NUTRITEK mark because Diamond V's mark is registered and used for animal feed whereas Foremost's mark is registered and used solely for human consumption. The critical question is not whether the parties' products are identical or directly competitive, but whether potential customers might reasonably believe that the products come from the same source. This is a fact issue ill-suited for resolution at the pleading stage, despite Diamond V's insistence that this is an extraordinary case in which a likelihood of confusion is impossible. The court will deny Diamond V's motion.

ALLEGATIONS OF FACT

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the "court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). The court takes the following facts from Foremost's amended complaint. Dkt. 16.

Foremost (through its predecessors, which are immaterial to this motion) has used the mark NUTRITEK in connection with dried whey powder since 1961. The mark was federally registered in 1963 for use with "partially demineralized dried whey for human consumption, in [old U.S.] class 46." U.S. Registration No. 747,696. Although its federal registration is for dried whey for human consumption, Foremost's complaint alleges that its dried whey is suitable for and used as an ingredient in products for both human and animal consumption. *See, e.g.,* Dkt. 16, ¶¶ 47, 53. Foremost also alleges that it has sold dried whey under the NUTRITEK mark to "manufacturers, customers and ultimately consumers of animal feed products since at least 1995." *Id*. at ¶ 55.

Diamond V began using the mark NUTRITEK in 2014 or 2015 in connection with animal feed supplements. The mark was federally registered in 2015 for use with "animal feed supplements, in [current international] class 5." U.S. Registration No. 4,728,885. Diamond V's supplements consist of "functional metabolites and fermentation compounds," which are added to other ingredients to make animal feed.

As registered, the marks are identical. But there are subtle typographic differences in the marks as actually used. Both are printed in sans serif fonts and placed on bulk bags. An

example of Foremost's packaging is on the left, and an example of Diamond V's is on the right:



*Id.*, ¶¶ 41, 68. Foremost alleges that the parties use their marks "in overlapping channels of trade" and that they market to "overlapping manufacturers, customers and consumers." *Id.*, ¶ 72.

The court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367 because Foremost asserts claims under federal law, and its state-law claims are part of the same case or controversy.

ANALYSIS

The gist of Diamond V's motion is that Foremost uses its mark for human consumable products, a market separate and unrelated to the market for animal consumable products where Diamond V uses its mark. Thus, although the parties' marks as registered are identical, Foremost cannot plausibly allege a likelihood of confusion. Diamond V might ultimately prevail on some version of this theory, because even identical marks can be used on distinct products (think DELTA, used at the same time for an airline, plumbing fixtures, and power tools.) But this is not a matter that can be resolved on a motion to dismiss, because Foremost has adequately alleged that the parties use their marks in overlapping

markets, which makes a likelihood of confusion plausible. The court will decline to consider the materials outside the pleadings that Diamond V adduces in an attempt to show that Foremost's market is really limited to human products, specifically an ingredient for infant formula.[1]

When evaluating a motion to dismiss under Rule 12(b)(6), the question is "simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility requirement calls for "enough details about the subject-matter of the case to present a story that holds together." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (citation and quotation marks omitted).

Foremost asserts seven causes of action:

    Count I: trademark infringement under the Lanham Act;

    Count II: trademark infringement under common law;

    Count III: false designation of origin under the Lanham Act;

    Count IV: unfair competition under the Lanham Act;

---

[1] Diamond V adduces exhibits gathered from Foremost's website to show that Foremost does not sell whey powder for animal feed. *See* Dkt. 22. Diamond V argues that the court may consider those exhibits because Foremost refers to its website in the complaint. Although the court can consider documents referred to in the complaint on a motion to dismiss, that is a "narrow exception" to the general rule that the court will not consider evidence outside of the complaint. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). That narrow exception typically applies to references to specific, undisputed documents—for example, a contract. *Id*. Diamond V fails to establish that the exception applies to Foremost's website. *See My Health, Inc. v. Gen. Elec. Co.*, No. 15-cv-80, 2015 WL 9474293, at *4 (W.D. Wis. Dec. 28, 2015) ("The complaint does refer to GE's website, which is available at a specific domain name. But that website is not the equivalent of single document unequivocally identified and cited in a complaint.").

> Count V: unfair competition under common law;
>
> Count VI: unjust enrichment; and
>
> Count VII: registration cancellation under 15 U.S.C. § 1119.

Foremost relies on Wisconsin state law for its common-law claims. Diamond V moves to dismiss all seven.

## A. Counts I through V: trademark infringement, false designation of origin, and unfair competition

To prevail on the first five claims, Foremost must show, among other things, two elements for each: (1) a protectable mark; and (2) use of the mark that is likely to cause confusion among consumers. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001) (listing the elements of trademark infringement and unfair competition under the Lanham Act); *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997) (listing the elements of false designation of origin under the Lanham Act); *Thermal Design, Inc. v. Am. Soc'y of Heating Refrigerating & Air-Conditioning Eng'rs, Inc.*, No. 07-cv-765, 2008 WL 1902010, at *8 (E.D. Wis. Apr. 25, 2008) (listing the elements of unfair competition under common law); *First Wis. Nat'l. Bank of Milwaukee v. Wichman*, 85 Wis. 2d 54, 270 N.W.2d 168, 172-74 (1978) (discussing the elements of trademark infringement under common law).

Diamond V contends that Foremost fails to allege sufficient facts for either of the two elements. But the court concludes that Foremost adequately alleges both elements.

### 1. Protectable mark

As for the claims arising under the Lanham Act, a plaintiff can allege that it has a protectable mark in several ways: (1) alleging that the mark is registered with the USPTO; (2) alleging that the mark is registered in the Supplemental Register; or (3) alleging that the

mark, although unregistered, is entitled to protection under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Top Tobacco v. Fantasia Distrib. Inc.*, 101 F. Supp. 3d 783, 788 (N.D. Ill. 2015); *see also KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1013 (N.D. Ill. 2014).

Here, Foremost alleges that it registered its NUTRITEK mark with the USPTO, so it plausibly alleges that a protectable mark under the Lanham Act. Diamond V contends that Foremost's registration does not extend to animal feed products, but that is an issue more appropriately addressed under the second element of a trademark infringement claim, the likelihood of confusion. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677 n.11, 678-79 (7th Cir. 2001); *accord* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* §§ 24:5-24:12, 24:37 (4th ed.). Accordingly, the court will discuss in the next section whether the rights secured in Foremost's registered mark could extend to animal feed products. For the first element as to the federal claims, the court concludes that Foremost has alleged a protectable mark based on its registration.

As for the common-law claims, Foremost plausibly alleges that it acquired a protectable interest in the NUTRITEK mark through the use of the mark. The Lanham Act and common law exist independently of each other for the most part, and a federal registration by itself does not create a common-law right in the registered mark. *See S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665-66 (7th Cir. 2016). Under common law, a party can establish a protectable mark only by using the mark. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 502 (7th Cir. 1992). The use must be "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of [the adopter of the mark]." *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433-34 (7th Cir. 1999) (quoting *New W.Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d

1194, 1200 (9th Cir. 1979)). But an "actual sale[] is not necessary" to obtain a common-law right in the mark. *S.C. Johnson & Son, Inc.*, 835 F.3d at 666 (quoting *Johnny Blastoff*, 188 F.3d at 434). Nor must a plaintiff "show that the item in question has gained wide public recognition." *Id*. Rather, to show acquisition by use, "[i]t is enough . . . if the article with the adopted brand upon it is actually a vendible article in the market, with intent by the proprietor to continue its production and sale." *Id*. at 666, 668-69 (citations omitted) (reasoning that the sale of products on a publicly-available website is sufficient to establish acquisition by use despite the relatively low volume of sale).

Here, Foremost alleges that it acquired common-law rights in its NUTRITEK mark by using it. The complaint alleges that Foremost and its corporate predecessors have used the mark since 1961. Foremost does not allege in detail all the market segments to which it has sold NUTRITEK products, but Foremost alleges that it has continuously sold its dried whey products for human and animal use since at least 1995. Dkt. 16, ¶¶ 48, 53.

Diamond V contends that Foremost must allege far more details about the markets in which it sells its products under the NUTRITEK brand. As indicated above, this issue is more appropriately addressed in the context of the likelihood of confusion. Besides that, Diamond V fails to point to any rule of law that requires Foremost to allege such details. As the Seventh Circuit has explained,

> Any decision declaring "this complaint is deficient because it does not allege X" is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b).
>
> * * *
>
> Any district judge (for that matter, any defendant) tempted to write "this complaint is deficient because it does not contain [X]" should stop and think: What rule of law *requires* a complaint to contain that allegation?

7

*Vincent v. City Colls. of Chi.*, 485 F.3d 919, 923-24 (7th Cir. 2007) (emphasis in the original) (citations and quotation marks omitted)). Even in the new world of pleading after *Twombly* and *Iqbal*, Rule 8 requires a plaintiff to give only "adequate notice of the scope of, and basis for" the asserted claims. *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015) (citing *Vincent*, 485 F.3d at 923). Foremost has done so here. Foremost plausibly alleges that it has a protectable interest in its NUTRITEK mark.

2. **Likelihood of confusion**

Diamond V contends that Foremost fails to allege that Diamond V's NUTRITEK mark is likely to cause confusion among customers. The Seventh Circuit has identified seven factors that guide the court's likelihood-of-confusion analysis:

> (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another.

*Packman v. Chi. Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001). "No single factor is dispositive and courts may assign varying weights to each of the factors depending on the facts presented." *CAE, Inc.*, 267 F.3d at 678. At the pleading stage, the question is whether a plaintiff alleges enough facts "that plausibly could result in a successful outcome on the likelihood of confusion element of its claim." *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 715 (N.D. Ill. 2014). The likelihood-of-confusion analysis, which is "fact-intensive . . . ordinarily does not lend itself to a motion to dismiss." *Id*. (quoting *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F.Supp.2d 402, 412 (S.D.N.Y.2006)).

Here, Foremost plausibly alleges that Diamond V's NUTRITEK mark is likely to cause confusion among consumers. Foremost alleges that both Foremost and Diamond V use

8

their NUTRITEK marks with an identical spelling in similar sans serif font; they both place their NUTRITEK marks on bulk bags; they both sell their NUTRITEK products as ingredients to be blended in edible products for animals; and they use the marks in marketing to an overlapping set of buyers. Dkt. 16, ¶¶ 41, 44, 46, 64, 66-68, 77. These allegations, assumed true and construed in favor of Foremost, make plausible that Diamond V's NUTRITEK mark is likely to cause confusion among consumers. This does not seem to be a hard call.

But Diamond V contends that the parties products are so unrelated that confusion is not plausible. The court concludes that Foremost has adequately alleged that its products are related enough to pose a likelihood of confusion.

Two products are "related" if they "would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *CAE, Inc.*, 267 F.3d at 678 (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir. 1992). The central inquiry is "not whether the products are interchangeable, but whether the products are the kind the public might very well attribute to a single source." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 728-29 (7th Cir. 2015). This standard protects a trademark "owner's ability to enter product markets in which it does not now trade but into which it might reasonably be expected to expand in the future." *Sands, Taylor & Wood Co.*, 978 F.2d at 958. Thus, for example, the mark VERA on perfume can infringe on the mark VERA on household linens if customers are likely to think that those products come from the same source, even though perfume and linens are not interchangeable. *See Scarves by Vera, Inc. v. Todo Imports Ltd. Inc.*, 544 F.2d 1167, 1172-73 (2d Cir. 1976). Likewise, the mark WASH ZONE and the mark OIL ZONE can infringe on the

9

mark AUTOZONE if customers are likely to attribute the products and services bearing those marks to a single source, even though "[n]o consumer would mistake an AutoZone store, which mainly sells products, for a Wash Zone or an Oil Zone, which primarily provides services." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 931 (7th Cir. 2008).

Diamond V contends that its products are not related to Foremost's products because Diamond V's are for animals and Foremost's are for humans. Dkt. 21, at 13. But "there is no per se rule" that precludes relatedness or likelihood of confusion between human and animal products, and "each case must be decided on its own facts." *Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801, 803 (Fed. Cir. 1984).[2]

Diamond V is correct that sometimes human and animal products are different enough that "the identical mark can be registered" by the USPTO "for one group of products despite the prior use of the mark for the other." Dkt. 21, at 14. Diamond V's own registration for NUTRITEK makes the point: the examining attorney who allowed Diamond V's registration would almost certainly have considered Foremost's prior registration for NUTRITEK in another class, but allowed Diamond V's registration over it. But the court will not put much weight in the decision to issue Diamond V's registration for two reasons. First,

---

[2] *Compare Recot, Inc. v. Becton*, 214 F.3d 1322, 1327 (Fed. Cir. 2000) (likelihood of confusion between FRITO-LAY mark on human snacks and FRIDO LAY mark on dog food), *and Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1174 (C.D. Cal. 1986) (likelihood of confusion between GODIVA mark on human chocolates and DOGIVA mark on dog biscuits), *aff'd*, 830 F.2d 197 (9th Cir. 1987), *and V.I.P. Foods, Inc. v. Vulcan Pet, Inc.*, No. 78-cv-581, 1980 WL 30228, at *5 (N.D. Okla. July 29, 1980) (likelihood of confusion between VIP mark on human food and V.I.P. mark on dog and cat food), *rev'd on other grounds*, 675 F.2d 1106 (10th Cir. 1982), *with Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801, 803 (Fed. Cir. 1984) (no likelihood of confusion between ON-COR mark on frozen human food and ENCORE mark on cat food), *and Am. Sugar Ref. Co. v. Andreassen*, 296 F.2d 783, 784 (C.C.P.A. 1961) (no likelihood of confusion between DOMINO mark on human food and DOMINO mark on dog and cat food).

the classification system used by the USPTO "exist[s] solely for administrative purposes, and does not affect the substantive rights of a mark's owner in any way." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 269 (2d Cir. 2011); *accord* 3 J. *McCarthy supra* § 19:56. Second, the registration decision is ordinarily made solely on the basis of a comparison of the goods recited in the application and those cited in the prior registration. But this court evaluates not merely the recited goods, but the actual use as alleged in the complaint.

And in the complaint, Foremost alleges enough to make it plausible that consumers would reasonably believe that the parties' products come from the same source. The court does not put much stock in Foremost's allegation that the parties' products are physically similar and sold in similar packaging: they both sell their products in powder form in bulk bags bearing the NUTRITEK mark. *Id.*, ¶¶ 41, 68. If the parties' products are sold in separate markets, these physical similarities would not matter: no one sets out to buy some powder in a bulk bag. But Foremost alleges that its dried whey powder is suitable for a variety of uses, including both human consumption and animal consumption. Dkt. 16, ¶¶ 45, 54. Foremost also alleges that it has sold NURITEK brand whey powder to "manufacturers, customers and ultimately consumers of animal feed products since at least 1995." *Id.* at ¶ 53. Accordingly, it is plausible that some significant part of the buying public—those looking for ingredients for animal feed—could attribute the parties' products to a single source.

Diamond V contends that the allegations about Foremost's use of its NUTRITEK mark are merely conclusory, but the court disagrees. Foremost's allegations are not highly detailed, but they are not mere threadbare recitals of the legal standard. Nor is the court swayed by Diamond V's citation of materials from Foremost's website, adduced to show that Foremost's allegations that it uses the NUTRITEK mark in connection with animal products

are untrue. Diamond V may ultimately prove these allegations to be false, at summary judgment or at trial, but that is of no consequence on a motion to dismiss for failure to state a claim.

In sum, Foremost plausibly alleges that it has a protectable interest in its NUTRITEK mark and that Diamond V's NUTRITEK mark is likely to cause confusion among consumers. The court will deny Diamond V's motion to dismiss as to Counts I through V.

**B. Count V: common-law unfair competition**

Diamond V has a secondary argument concerning Count V for common-law unfair competition: Foremost fails to state a claim for common-law unfair competition because Foremost does not allege an intent to deceive. But intent to deceive is not an element of such a claim.

Under common law, there are at least two variations of an unfair competition claim: one based on trademark infringement, and the other based on misappropriation of the mark. *Thermal Design, Inc.*, 2008 WL 1902010, at *8 (collecting authorities). To prevail on an unfair competition claim based on trademark infringement, the plaintiff must show "(1) validity of the mark in question; and (2) infringement." *Id*. (quoting *Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1266 (7th Cir. 1989). To prevail on a claim based on misappropriation, the plaintiff must show "(1) time, labor, and money expended in the creation of the thing misappropriated; (2) competition; and (3) commercial damage to the plaintiff." *Mercury Record Prods., Inc. v. Econ. Consultants, Inc.*, 64 Wis. 2d 163, 218 N.W.2d 705, 709 (1974). Neither variation requires a plaintiff to prove, show, or allege an intent to deceive.

Diamond V argues that Foremost must plead intent to deceive, relying on *Mil-Mar Shoe Co., Inc. v. Shonac Corp*., 75 F.3d 1153 (7th Cir. 1996). There, the Seventh Circuit noted

that the district court "found that an unfair competition claim requires evidence that the defendant intended to mislead or deceive the public into believing that its product was associated with that of the plaintiff." 75 F.3d at 1155. But the Seventh Circuit expressly noted that it would not address this issue on appeal. *Id*. n.4. Accordingly, Diamond V has not established that Foremost must allege an intent to deceive, and the court will deny Diamond V's motion to dismiss as to the common-law unfair competition claim.

## C. Count VI: unjust enrichment

Diamond V seeks to dismiss Foremost's unjust enrichment claim based on a purely jurisdictional argument: according to Diamond V, because Foremost fails to state any federal claim, the court should decline to exercise supplemental jurisdiction over the unjust enrichment claim arising under state law. But as discussed above, Foremost states federal claims. Accordingly, the court will exercise its supplemental jurisdiction over the unjust enrichment claim because it is intertwined with the federal claims.

## D. Count VII: cancellation

Diamond V asks the court to dismiss Foremost's claim for cancellation of Diamond V's trademark registration because cancellation is merely a remedy, not an independent cause of action.

Diamond V is correct that Foremost could not bring a free-standing complaint for cancellation of Diamond V's registration in this court. This court would not have jurisdiction over a simple claim for cancellation; that claim could be made only to the Trademark Trial and Appeal Board, part of the Patent and Trademark Office. *See Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014); *Thomas & Betts Corp. v. Panduit Corp.*, 48 F. Supp. 2d 1088, 1093 (N.D. Ill. 1999). But in a

13

trademark infringement case in district court, the court may order cancellation of the trademark registrations of any party to the action. 15 U.S.C. § 1119; *see also Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007). Because Foremost asserts trademark infringement claims, its request for cancellation of Diamond V's federal trademark registration poses no jurisdictional impediment.

If the cancellation claim were the sole remaining claim, the court would dismiss it for lack of jurisdiction. But because the court continues to have jurisdiction over Foremost's trademark infringement claims, it will not dismiss the cancellation claim.

ORDER

IT IS ORDERED that defendant Diamond V Mills, Inc.'s motion to dismiss, Dkt. 20, is DENIED.

Entered April 18, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge