IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FOREMOST FARMS USA, COOPERATIVE,

                         Plaintiff,

   v.

DIAMOND V MILLS, INC.,

                         Defendant.

OPINION & ORDER

16-cv-551-jdp

---

This is a dispute over the trademark NUTRITEK, to which both parties claim rights. Plaintiff Foremost Farms USA, Cooperative, uses NUTRITEK for demineralized whey powder, a by-product of cheese-making used primarily as an ingredient in processed foods, but sometimes as an ingredient in animal feed. Defendant Diamond V Mills, Inc., uses NUTRITEK for fermented yeast powder, used as a supplement in dairy cattle feed. Both parties have federal registrations for their marks, but Foremost alleges that it is the senior user and that Diamond V infringes its trademark rights.

Diamond V moves for summary judgment, asking the court to decide as a matter of law that there is no likelihood of confusion. Diamond V's central premise is that the parties' branded products are sold in distinct markets. According to Diamond V, Foremost sells NUTRITEK-brand whey powder only for human consumption. It sells lesser-quality whey powder for use in animal feed, but only as an unbranded commodity. There is no likelihood of confusion, the argument goes, because the Foremost does not use its NUTRITEK mark in the animal feed market, and Diamond V does not sell NUTRITEK products as an ingredient for human foods.

The court will deny Diamond V's motion. There is no dispute that Foremost sells demineralized whey powder as an ingredient for animal feed. But how it brands the product when it is sold for animal feed is genuinely disputed. Foremost adduces evidence that the product destined for animal feed is sometimes delivered in bags bearing the NUTRITEK mark, that its sales force and customers refer to the product as "NUTRITEK," and that its invoices use the term "NUTRITEK." This evidence does not compel a jury to find that Foremost uses NUTRITEK as a trademark in the animal feed market, but it is enough to raise a genuine dispute of fact that requires trial.

The court will grant Diamond V's motion for summary judgment on Foremost's separate claim for unjust enrichment, but otherwise Diamond V's motion is denied.

PRELIMINARY MATTERS

The court begins with two preliminary matters. First, Foremost moves to strike parts of Diamond V's motion for summary judgment for failure to comply with this court's procedures. Dkt. 87. Some of Diamond V's proposed findings of fact cite documents that have not been filed, cite wrong documents, and lack evidentiary support. But Foremost essentially asks for a sanction, and any sanction imposed by a court must be proportionate to the underlying violation. *See Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998). The court will disregard proposed facts that significantly fail to comply with the court's procedures, but it will not strike any part of the motion.

Second, Diamond V asks for leave to file corrected proposed findings of facts. Dkt. 99. The court will not force Foremost to expend unnecessary costs by requiring it to respond to

the corrected proposed findings of fact. The court will deny Diamond V's motion for leave to file corrected proposed findings of facts.

The main issue at this point turns on Foremost's evidence of how it uses the NUTRITEK mark, an issue not substantially affected by the deficiencies in Diamond V's proposed findings of fact. So it is fair to both sides to decide Diamond V's summary judgment motion on the merits.

UNDISPUTED FACTS

The following background facts are undisputed unless otherwise noted. Additional facts are discussed where pertinent in the analysis section.

A. Foremost's NUTRITEK

Foremost is a dairy cooperative based in Baraboo, Wisconsin. Foremost processes milk produced by its member farms to make dairy products, including fluid milk, butter, and cheese.

Foremost also processes whey, a fluid by-product of cheese-making, into ingredients for processed foods. Besides water, whey comprises protein, lactose, and a variety of minerals. These components, especially the protein and the lactose, are useful as food ingredients. For many food applications, some minerals are removed to improve the taste, texture, and nutritional value of the final food product.

Beginning in 1961, Foremost (through a predecessor) began selling partially demineralized whey powder as a food ingredient under the NUTRITEK mark. In 1963, the United States Patent & Trademark Office (USPTO) registered Foremost's NUTRITEK mark for use with "partially demineralized dried whey for human consumption," in old U.S. class 46. *See* U.S. Registration No. 747,696.

Foremost sells most of its demineralized whey powder as an ingredient for human food. It sells several varieties of NUTRITEK, which have been demineralized to different extents. For example, NUTRITEK 250 has 25% of the minerals removed; it is used in food products such as salad dressing. NUTRITEK 900 has 90% of the minerals removed; it is used as an ingredient in infant formula.

For reasons not fully explained in the record, sometimes the demineralized whey powder does not meet the standards for human consumption. Foremost sells that "downgrade" demineralized whey through a distributor as an ingredient for animal feed. The downgrade product is sold at a significantly lower price than Foremost's human food products. Although only a small proportion of Foremost's demineralized whey powder is sold as an animal feed ingredient, the amount is nevertheless significant. Since 1998, Foremost has sold more than 12 million pounds of demineralized whey powder in the animal feed market, representing more than $3.2 million in sales. Dkt. 119, ¶ 29.

The parties dispute whether Foremost actually uses the NUTRITEK mark in the animal feed market. Diamond V contends that the demineralized whey powder sold as an animal feed ingredient is essentially scrap, sold as an unbranded commodity. But Foremost adduces evidence that it sometimes delivers its animal feed product in bulk bags bearing the NUTRITEK mark. Foremost sometimes delivers the product in 2,000-pound totes that do not bear the NUTRITEK mark. Dkt. 125, ¶ 66.

Foremost sells demineralized whey powder for animal feed market through an exclusive distributor, Diversified Ingredients, Inc. Foremost adduces a declaration from Matthew Collins, a trader from Diversified, who states that he and his customers refer to Foremost's demineralized whey powder by a variety of terms, but that they all understand that they are

4

referring to Foremost's NUTRITEK product. Dkt. 81, ¶¶ 6–7, 10–11. Collins has attached to his declaration invoices that show sales of demineralized whey powder. Some invoices refer to the whey powder as NUTRITEK, and others refer to it by other names. Dkt. 81-1.

**B. Diamond V's NUTRITEK**

Diamond V, based in Cedar Rapids, Iowa, makes animal feed supplements using microbial fermentation. Diamond V's product at issue here is fermented yeast powder that reduces inflammation in the digestive tracts of lactating cows. Diamond V sells this product under the NUTRITEK mark to animal feed ingredient manufacturers, to animal feed ingredient distributors, to animal feed manufacturers, and to dairy producers.

On February 19, 2014, Diamond V applied to register its NUTRITEK mark on an intent-to-use basis. Diamond V contends that the first sale of its NUTRITEK product was in 2014 through a licensee, Dkt. 54, at 5 and Dkt. 85-35, at 2–3, even though Diamond V's filings with the USPTO indicate that the mark's first use in commerce was on February 11, 2015, Dkt. 85-47, at 4. The USPTO registered Diamond V's NUTRITEK mark on April 28, 2015, for "animal feed supplements" in Class 5. *See* U.S. Registration No. 4,728,885.

**C. Jurisdiction**

The court has subject matter jurisdiction under 28 U.S.C. § 1331 because Foremost asserts claims under the Lanham Act, 15 U.S.C. §§ 1114, 1125. The court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

ANALYSIS

Foremost asserts seven causes of action. The first five are typical federal and state law claims for trademark infringement and unfair competition. The two other claims are for unjust

enrichment and for cancellation of Diamond V's NUTRITEK registration. Diamond V moves for summary judgment on all seven claims.

The usual summary judgment standards apply. A court must grant summary judgment when no genuine issue of a material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court must view the evidence in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if no reasonable juror could find in favor of the nonmoving party. *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996).

## A. Likelihood of confusion

To prevail on its trademark infringement and unfair competition claims, Foremost must prove two elements: (1) ownership of a protectable mark and (2) use of the mark by another that is likely to cause confusion among consumers. *See, e.g., CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001). Diamond V concedes that Foremost has a protectable NUTRITEK mark; the issue is whether Diamond V's use of the NUTRITEK mark is likely to cause confusion among potential purchasers of the parties' products.

Courts conceptualize the likelihood of confusion analysis in various ways, but the differences are mostly semantic rather than substantive. The parties here apparently agree that the same standards apply to both the federal and state law claims, so the court will follow the parties' lead and rely on the Seventh Circuit's articulation of the standard. In this circuit, courts assess a likelihood of confusion using seven non-exclusive factors:

> (1) similarity between the marks in appearance and suggestion;
> (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and

6

> (7) intent of the defendant to "palm off" his product as that of another.

*Packman v. Chi. Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001). No one factor is dispositive. *Nike, Inc. v. Just Did It Enterprises*, 6 F.3d 1225, 1228 (7th Cir. 1993). The court may "assign varying weight to each of the factors depending on the facts presented, though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

The likelihood of confusion is "a question of fact, usually reserved for the jury." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). But summary judgment is still appropriate if no reasonable juror could find in favor of the nonmoving party. *Id.* Foremost contends that, in the Seventh Circuit, a court must be especially reluctant to grant summary judgment on the likelihood of confusion issue because it is inherently fact-intensive. For the reasons given in *Epic Sys. Corp. v. YourCareUniverse, Inc.*, 244 F. Supp. 3d 878, 890–91 (W.D. Wis. 2017), the court is not persuaded that a special summary judgment standard applies in trademark cases. In any event, the subtleties of that point do not concern us here because material facts are plainly in dispute and summary judgment is not warranted.

The court will walk through the factors, but the essential factual dispute concerns whether Foremost actually uses the NUTRITEK mark in the market for animal feed ingredients.

### 1. Similarity between the marks

The parties' NUTRITEK marks are virtually identical, so this factor tips sharply against Diamond V.

Nevertheless, the court must assess the similarity of the marks in "light of what happens in the marketplace." *AutoZone*, 543 F.3d at 930. Even if two marks are identical, the context

such as "the appearance and placement of the words" can alleviate confusion. *Packman*, 267 F.3d 645–46; *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 705–06 (7th Cir. 2014).

Diamond V points to some slight typographic differences and to some additional branding information on the products' packages, such as the parties' company logos. But these differences are so minor that they do not defuse the strong similarity in the marks themselves.

**2. Similarity between the products**

The parties' products do not compete, and they do not substitute for one another. There is no evidence that a potential customer could use fermented yeast power instead of demineralized whey powder. But in evaluating the similarity of products, the question is "not whether the products are interchangeable, but whether the products are the kind the public might very well attribute to a single source." *Sorensen*, 792 F.3d at 728–29. The law prohibits using a senior mark not only on products that compete with those of the senior mark's owner but also on products that are "closely related" to the products of the senior mark's owner. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir. 1992). "Closely related" products are those "which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Id.*

Here, the products are closely related because they are both potential ingredients of animal feed. *See CAE*, 267 F.3d at 681; *Sands,* 978 F.2d at 958. A purchaser of animal feed ingredients might well assume that a single source would provide both demineralized whey powder as a source of nutrients and fermented yeast powder as a feed supplement.

If Foremost uses the NUTRITEK mark *only* in connection with an ingredient for human food, then Diamond V would have a strong position on this factor. Indeed, the USPTO issued Diamond V's NUTRITEK registration despite Foremost's senior registration for the same mark. The USPTO registration is, of course, not binding here. *See Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 269 (2d Cir. 2011); 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 19:56 (5th ed.). But Foremost has not argued that it could press its infringement case based solely on its use of NUTRITEK as a human food ingredient.

The court will view the evidence in the light most favorable to Foremost, and thus this factor tips against Diamond V's motion for summary judgment.

### 3. Area and manner of use

This factor considers whether the parties' marks are used in the same market where consumers are likely to encounter the marks and confuse their sources. In assessing this factor, "courts look at whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *Sorensen*, 792 F.3d at 730. Courts also consider "whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." *Id.* (internal citations and quotations omitted). Here, both parties sell to those in the animal feed industry who purchase animal feed ingredients. So, at least at the general level, the parties sell their products in the same market.

Diamond V argues that under the actual circumstances of this case, Foremost's product and Diamond V's do not actually reach the same customers, and the parties do not compete for the same customers. Foremost sells its demineralized whey powder as an animal feed ingredient solely through a single distributor, Diversified, so the parties currently have no overlapping customers.

Diamond V's position would be stronger if it could show that there was some structural impediment prevents the parties from selling their products to the same customers—in other words, if the parties were actually committed to different channels of trade. But the fact that their customers have not yet overlapped is apparently due to happenstance. Foremost's exclusive distribution agreement with Diversified expires later this year, and Foremost could elect to sell its demineralized whey powder in the animal feed market however it wants, so its current exclusive distribution through Diversified matters little here. *See* 4 *J. McCarthy supra* § 24:53 ("In many cases, a party's *present* method of distribution is not given much weight, on the theory that marketing methods are always subject to change in the future.") (emphasis in original). And Diamond V began using the NUTRITEK mark nationwide only in January 2016, Dkt. 125, so the absence of an overlapping customer is not surprising.

Once again, it's worth pointing out that Diamond V's case on this factor will be stronger if Foremost does not actually use the NUTRITEK mark on demineralized whey powder in the animal feed market. But, drawing all reasonable inferences in Foremost's favor, this factor tips against Diamond V.

### 4. Degree of care likely to be exercised by consumers

The exercise of great care in purchasing decisions tends to alleviate potential confusion. *See CAE*, 267 F.3d at 683. On the other end of the spectrum, impulsive purchases carry a greater potential for consumer confusion. *Sorensen*, 792 F.3d at 730. The court is satisfied here that the purchasers of the parties' products are reasonably sophisticated individuals who make commercial-scale purchases and exercise care in discerning the products' sources. This factor militates against confusion.

5. **Strength of Foremost's mark**

The strength of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the source of a product or service. *Id.* at 731. The stronger the senior mark, the more likely a similar junior mark will cause confusion. *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 219 (7th Cir. 1978).

Diamond V argues that Foremost's NUTRITEK mark is weak for three reasons. First, the mark is inherently weak because it is suggestive, not arbitrary or fanciful. Second, Foremost has adduced no evidence that it has acquired strength by dint of extensive use, particularly in the animal market. Third, there are many third-party registrations for variations of NUTRITEK. Diamond V does not provide enough information about the third-party registrations for the court to evaluate them, and it is third-party use, not mere registration, that matters. *AutoZone*, 543 F.3d at 933. The court credits only the first two reasons against the strength of Foremost's NUTRITEK mark.

But the strength of Foremost's NUTRITEK mark is still genuinely disputed. Foremost marshals evidence that its mark is strong, especially the undisputed fact that it has been in continuous use for more than 50 years on human food products. And Foremost has been selling demineralized whey powder in the animal feed market since 1998; if Foremost has been using the NUTRITEK mark in the animal market, this long history of use is some evidence of acquired strength.

Ultimately, this factor warrants only little weight when, as here, the marks are "virtually identical" and the products are "closely related." *Sands*, 978 F.2d at 959 (citation omitted). So even if NUTRITEK is a weak mark, Diamond V's use of an identical mark can cause consumer

confusion. Again, drawing all reasonable inferences in Foremost's favor, this factor tips against Diamond V.

### 6. Instances of actual confusion

A trademark owner need not prove actual consumer confusion to show a likelihood of confusion. *Sands*, 978 F.2d at 960. But instances of actual confusion are usually compelling evidence of a likelihood of confusion. *See id*.

Foremost adduces three instances that it contends show actual confusion: when Elena Lindemann, a marketing manager of a company affiliated with Diamond V, first saw a photograph of Foremost's NUTRITEK, she mistakenly concluded that Foremost was infringing Diamond V's trademark rights; Alan Gunderson, a vice president of sales at Vita Plus, a Foremost customer, opined that the parties' NUTRITEK marks were confusing after reviewing the marks; and an anonymous caller asked whether Linda Strachan, a sales manager of Foremost, knew about Diamond V's use of the NUTRITEK mark. These instances do not show actual confusion because none of the individuals were confused as to the sources of the products they saw. A person's opinion that the parties' marks are similar is not evidence of actual confusion as to the products' sources.

Foremost has adduced no evidence of actual confusion. But, in the absence of such evidence, this factor warrants little weight. *CAE,* 267 F.3d at 686.

### 7. Diamond V's intent

The final factor is whether the defendant intended to "'pass off' [its] products as having come from the plaintiff." *Packman*, 267 F.3d at 644. Again, as with the evidence of actual confusion, the trademark owner need not show intent, but evidence of intent to cause

confusion is particularly compelling. *See, Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 465 (7th Cir. 2000).

Foremost's arguments on this factor are variations of one point: Diamond V knew about Foremost's NUTRITEK mark but registered an identical mark anyway. Knowledge of a senior mark is not sufficient to show the requisite intent to confuse. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1046 (7th Cir. 2000).

But this just means that this factor gets no weight in the analysis. "[I]f potential purchasers are confused, no amount of good faith can make them less so." *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596 (5th Cir. 1985) (citations omitted); *see also* 4 J. McCarthy supra § 23:124 ("Thus, intent is a one-way street that can lead to liability but cannot be a defense from liability.").

### 8. Summary of factors

The issue of likelihood of confusion requires trial because Foremost has adduced evidence that it sells NUTRITEK-branded demineralized whey powder in the animal feed market. This fact, if established, would tip several factors in Foremost's favor, and Foremost could convince a reasonable jury that confusion is likely.

## B. Common law trademark infringement, common law unfair competition, and disgorgement

Diamond V moves for summary judgment on Counts II and V for another reason: that Foremost cannot show that it suffered damages as a result of the infringement. Dkt. 54, at 34–36. For the same reason, Diamond V asks the court to rule that Foremost is not entitled to disgorgement.

Foremost has not adduced evidence of lost sales caused by the alleged infringement. But the loss of sales is not the only basis for damages or the only form of injury in a trademark suit. Foremost's evidence of monetary damages is sparse in the summary judgment record, but the damages question is normally addressed through expert evidence, which the parties have not submitted; expert reports were not due before Foremost filed its brief in opposition to Diamond V's summary judgment motion. Dkt. 19, at 3. Diamond V argues that Foremost conceded to having no evidence of damages, relying on testimony of Foremost's Rule 30(b)(6) witness, Declan Roche. Dkt. 125, ¶¶ 161–64. Roche was unaware of Foremost's damages during his deposition, but a Rule 30(b)(6) witness's denial of knowledge does not bind a party in the sense of a judicial admission. *Bello v. Vill. of Skokie*, 151 F. Supp. 3d 849, 861 (N.D. Ill. 2015).

Diamond V's motion for summary judgment is denied as to Counts I through V and the issue of disgorgement.

## C. Unjust enrichment

Diamond V also moves for summary judgment on Foremost Farm's unjust enrichment claim.

Wisconsin recognizes a cause of action for unjust enrichment. It has three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 2017 WI 110, ¶ 30, 904 N.W.2d 789, 798. Foremost contends that Diamond V's knowing and unauthorized use of its trademark meets these elements.

Diamond V contends that Foremost has no evidence that it conferred any benefit on Diamond V. Diamond V also contends that it neither appreciated nor accepted any benefit from Foremost because it knew nothing about Foremost's NUTRITEK mark. Whether Diamond V knew about Foremost's mark is a disputed fact. Diamond V conducted trademark searches as far back as 2009; properly done, those searches should have uncovered Foremost's NUTRITEK mark. Dkt. 119, ¶¶ 77–82. And there is evidence that Diamond V knew about similar "Nutri-type" marks. Dkt. 85-46, at 12.

But the court will nevertheless grant Diamond V's motion as to this count. Diamond V points to the absence of evidence that Foremost conferred any benefit, so the burden shifts to Foremost. *See Wilson-Trattner v. Campbell*, 863 F.3d 589, 596 n.5 (7th Cir. 2017); *Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). Foremost's defense of this count is only two paragraphs. Dkt. 86, at 49–50. Foremost argues that the benefit here is Diamond V's use of Foremost's NUTRITEK mark without authorization. Foremost does not cite a single case in which the unauthorized use of a trademark constituted a benefit conferred on the infringer by

the trademark owner. This court has found no case supporting such a theory. Foremost has not adequately developed its argument, so the court will consider it forfeited.

In any case, unjust enrichment is more properly considered as a remedy already available for trademark infringement under the Lanham Act. *See Sands*, 978 F.2d at 961. Following *Sands* and 15 U.S.C. § 1117(a), the court can award Foremost some portion of Diamond V's profits if equitable considerations require it. But there is no need to maintain unjust enrichment as a separate cause of action, particularly when Foremost adduces no authority to support its application to a case of trademark infringement.

**D. Registration cancellation**

Finally, Diamond V seeks summary judgment on Foremost's cancellation claim, repeating the same argument from Diamond V's motion to dismiss: that cancellation is not an independent cause of action. It is true that Foremost cannot bring a free-standing claim to cancel Diamond V's registration in this court, but the court may order cancellation of Diamond V's trademark registration as a remedy if Foremost prevails on its trademark claims. 15 U.S.C. § 1119; *see also Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007). Whether Foremost characterizes the proposed cancellation as a "claim" or a remedy in the complaint makes no substantive difference. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Diamond V's motion for summary judgment as to the request for cancellation is denied.

ORDER

IT IS ORDERED that:

1. Diamond V Mills, Inc.'s motion for summary judgment, Dkt. 53, is GRANTED in part and DENIED in part.

2. Plaintiff Foremost Farms USA, Cooperative's motion to strike defendant Diamond V Mills, Inc.'s motion for summary judgment, Dkt. 87, is DENIED.

3. Defendant's motion for leave to file corrected and substituted proposed findings of fact, Dkt. 99, is DENIED.

Entered February 9, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge